ATTORNEYS FOR THE RESPONDENT
Kevin P. McGoff
Kelly R. Eskew
Indianapolis, Indiana

ATTORNEY FOR THE INDIANA SUPREME COURT
DISCIPLINARY COMMISSION
Donald R. Lundberg, Executive Secretary
Dennis K. McKinney, Staff Attorney
Indianapolis, Indiana

# In the
# Indiana Supreme Court



No. 49S00-0503-DI-119

IN THE MATTER OF

## MERRILL "SCOOTER" MOORES[1]                    *Respondent.*

Disciplinary Action

**September 29, 2006**

*Per Curiam,*

This matter is before us on the report of the hearing officer appointed by this Court to hear evidence on the Disciplinary Commission's *Verified Complaint for Disciplinary Action,* and the post-hearing pleadings of the parties. We find that the respondent engaged in attorney misconduct by representing clients with conflicting interests, failing to explain matters to the extent reasonably necessary to permit clients to make informed decisions about the representation, entering into an unreasonable business transaction with them, and failing to expedite the litigation. For

---

[1] We include respondent's nickname at his request to distinguish respondent from his father who is also an attorney and shares the same name.

this misconduct, we find that respondent should be suspended from the practice of law for thirty (30) days, with automatic reinstatement thereafter.

Where, as here, the hearing officer's report is challenged, we review the record presented *de novo. Matter of Wilder*, 764 N.E.2d 617 (Ind.2002). Final determination as to misconduct and sanction rests with this Court. *Matter of Lamb*, 686 N.E.2d 113 (Ind.1997); *Matter of Gerde*, 634 N.E.2d 494 (Ind.1994). We find the relevant facts as follows: In March 2002, J.R., who owned several parcels of land in Greenwood, Indiana, obtained a loan which was intended to be secured by a mortgage on a half-acre parcel. The mortgage however listed a two-acre parcel, also owned by J.R., as securing the loan. J.R. later sold an interest in the two-acre parcel to M.D. J.R. fell behind in his mortgage payments on the half-acre parcel and the mortgage company sued to foreclose on the two-acre parcel that had been mistakenly listed in the mortgage. As a result, M.D.'s interest in the two-acre parcel was put at risk. Subsequently, J.R. and M.D. hired respondent to represent them in the foreclosure on the two-acre parcel. Respondent requested a $4,000 retainer that the clients could not pay in full. To protect himself from his clients, respondent had the clients sign an eight-year exclusive listing agreement with respondent (who also held a real estate broker's license) on terms unfavorable to the clients. This agreement covered the two-acre parcel and an adjoining piece of property also owned by J.R. Respondent urged the clients to raise the funds to bring the mortgage current while he delayed the foreclosure proceeding.

The mortgage company moved for summary judgment and respondent requested an extension of time to respond. Respondent did not file a response and did not appear at the summary judgment hearing. He purposely failed to appear because he was concerned he would have to reveal that the foreclosure action was brought against the wrong property. Respondent planned to allow the court to grant the summary judgment motion and then move to set aside the judgment pursuant to Ind.Trial Rule 60(B). This tactic was intended to delay the foreclosure to allow the clients to raise funds to bring the mortgage current on the half-acre parcel, and thereby protect J.R.'s residence, which was situated on the half-acre parcel. Respondent did not inform his clients of the filing of the summary judgment motion until after it was granted. Upon learning that summary judgment had been entered against them, both clients obtained new counsel. M.D.'s counsel had the action against his client dismissed and the foreclosure directed at the half-acre parcel.

We agree with the conclusions of the hearing officer and find that respondent committed the misconduct charged by the Commission. J.R. and M.D. had competing interests that prohibited respondent from representing them simultaneously. J.R. was interested in protecting his residence on the one-half acre plot that should have been, but was not, subject to foreclosure. M.D.'s interest in the two-acre plot was needlessly put at risk in an attempt by respondent to protect J.R.'s home. By representing both clients in this situation respondent violated Ind. Professional Conduct Rule 1.7(b) (2002), which prohibits a lawyer from continuing to represent a client when the representation may be materially limited by the lawyer's responsibilities to another client.

Respondent also entered into an unreasonable business transaction with his clients. The eight-year listing agreement, which the respondent himself described as extraordinarily long, was intended to protect respondent from his clients. Without the clients having the benefit of independent counsel, respondent convinced them to sign the listing agreement to protect respondent's potential commission upon on sale of the property. To further guard himself from his clients, respondent also included language giving him first right of refusal on the sale of the property. Respondent agreed that the sole reason for the option was to protect his potential commission from a below market sham sale. Respondent's own testimony established that use of first right of refusal language was unusual for such an agreement. By entering into a business transaction with his clients on terms that were not reasonable and fair, and without giving the clients a reasonable opportunity to seek independent counsel, respondent violated Prof.Cond.R. 1.8(a) (2002).

A major concern in this case is the strategy that respondent adopted to represent his clients. He chose to stall and delay, and failed to appear at a hearing on a motion for summary judgment. He did not advise his clients of his strategy or when summary judgment was entered against them. As a result, M.D., who should not have been involved in the litigation at all, had to endure the scheme respondent devised in order to protect J.R.'s home. Respondent "justified" his failure to appear at the summary judgment hearing because he would have to explain that the mortgage was being foreclosed on the wrong property. Though such a disclosure would have benefited M.D., it would have been harmful to J.R. This course of conduct violated Prof.Cond.R. 1.2(a) (2002), which requires a lawyer to consult with his client as to the means by which the objectives of the representation are pursued; Prof.Cond.R. 1.4(b) (2002), which requires a lawyer to explain a matter to the extent reasonably necessary to permit the client to make informed decisions re-

3

garding the representation; and Prof.Cond.R. 3.2 (2002), which requires a lawyer to make reasonable efforts to expedite litigation consistent with the interests of the client.

It is this last issue, the failure to expedite litigation that comprises respondent's substantive challenge to the hearing officer's conclusions. He maintains that this violation was not established by clear and convincing evidence. Delaying court proceedings merely to obstruct the course of legal proceeding is not an acceptable means of conducting litigation. In this case, stalling was not consistent with the interests of M.D. Upon hiring new counsel, M.D. was dismissed from the litigation of which he should never have been a part. The evidence is clear and convincing that respondent violated Prof.Cond.R. 3.2.

This brings us to the issue of the discipline to impose, which the parties contest. The Hearing Officer recommends a sixty (60) day suspension from the practice of law. The Commission, which originally suggested to the Hearing Officer that a public reprimand was appropriate, now urges the Court to adopt the Hearing Officer's recommendation. Respondent asks the Court to follow the Commission's earlier suggestion and impose a public reprimand.

Respondent contends the Court should consider several mitigators in determining what sanction to impose. He cites his lack of a prior disciplinary record, and that he cooperated with the Commission, had no dishonest or selfish motive, and has shown remorse. We do not find significant mitigation.

Respondent does not have a record of prior disciplinary action, and as a mitigator, this is of some value.

His cooperation with the Commission consisted of doing nothing more than what is required by Ind. Admission and Discipline Rule 23 § 10(e). Further, the Commission asserts that Respondent's cooperation was "illusory". Apparently, respondent's answers to the Commission's initial investigation and his later answers in the proceedings varied substantially. Such conduct does not earn respondent any consideration in mitigation of his discipline.

That respondent's conduct was not motivated by dishonest or selfish motive is questionable. Respondent convinced his clients to enter into a business transaction that was unfair to them and benefited respondent. He obtained an unusually long exclusive listing agreement and a right of first refusal to protect himself, not serve his clients. He is not entitled to any mitigation on this point.

4

Finally, from a review of the Hearing Officer's findings, we are convinced that respondent's remorse is limited to his regret for having been called to account for his conduct. Respondent's assertions that he did nothing wrong and that his delay strategy served his clients demonstrate that respondent does not understand the nature of his violations.

We imposed a six-month suspension for a lawyer who purposely failed to appear on seven occasions for proceedings in a client's criminal case. *Matter of Shull*, 741 N.E.2d 723 (Ind. 2001). Like the respondent, the lawyer in *Shull* believed his delaying tactic was a commendable strategy. We disagreed with Shull and we disagree with respondent. M.D. received no advantage from respondent's delaying tactics. In another case, we imposed a two month suspension where a lawyer failed to disclose information to a tribunal and engaged in deceit. *Matter of Ouellette*, 636 N.E.2d 1251 (Ind. 1994). On the other hand, respondent's delaying tactics were less pervasive than in *Shull* and there is no finding of direct deceit in this case.

Giving consideration to the hearing officer's recommendation for a sixty (60) day suspension, the Commission's prior suggested penalty of a public reprimand, past disciplinary cases, and the facts of this case, we now suspend respondent from the practice of law for thirty (30) days, effective November 13, 2006, with reinstatement thereafter as contemplated by Ind. Admission and Discipline Rule 23 § 4(c).

Costs of this proceeding are assessed against the respondent.