**In the Matter of Robert W. MILLER.**

**No. 48S00–9511–DI–1264.**

Supreme Court of Indiana.

June 13, 2000.

---

Martin E. Risacher, Church, Church Hittle & Antrim, Noblesville, IN, for the Respondent.

Donald R. Lundberg, Executive Secretary, Robert C. Shook, Staff Attorney, Indianapolis, IN, for the Indiana Supreme Court Disciplinary Commission.

## PER CURIAM.

Attorney Robert W. Miller, while serving as an attorney and personal representative of two estates, paid to himself estate funds without justification for doing so and retained legal fees which he should have turned over to his law firm. Today we approve a conditional agreement between the Disciplinary Commission and respondent Miller which calls for the respondent's suspension from the practice of law for this professional misconduct.[1]

During relevant times, the respondent was the senior partner in a law firm in Anderson, Indiana. Under count I of the verified complaint underlying this action, the Commission and the respondent agree

that on August 1, 1988, the respondent was appointed personal representative and attorney for an estate pending in the Madison Superior Court. Between September 1988 and August 1993, the respondent wrote 111 checks totaling $148,925 from the estate payable to himself. The checks were for varying amounts and were not in sequential order. Of the $148,925, only $80,000 could be identified as attorney fees and executor fees. While the respondent, as attorney and personal representative of the estate, had authority to pay himself fees pursuant to Ind.Code 29–1–7.5–3, he breached his fiduciary duty to the estate by paying himself $68,925 more than the identifiable executor and attorney fees.[2] The respondent later reimbursed the heirs to the estate $104,720.68, thereby reducing his total fees to $44,205.

We find that the respondent engaged in conduct prejudicial to the administration of justice in violation of Ind. Professional Conduct Rule 8.4(d) by taking for himself estate funds in excess of identifiable attorney fees or executor fees.[3]

As to count II, we find that the Madison Superior Court appointed the respondent personal representative of a supervised estate. Between March 7, 1994 and May 24, 1994, the respondent wrote to himself a total of 15 checks totaling $16,500 drawn on estate funds. The respondent did not obtain the necessary court approval for the expenditure of the $16,500 or inform the principal heir of the expenditure until July

1. The respondent was admitted to the practice of law in Indiana in 1956 and thus is subject to this Court's disciplinary jurisdiction.

2. The Commission and the respondent agree that the fact that the respondent acted as both personal representative and attorney for the estate negates a finding that he "converted" estate funds because his use of the funds was not "unauthorized" as that term is defined by the statutory definition of "conversion." Despite that justification, we note that we find no violation of Prof.Cond.R. 8.4(b), which prohibits lawyers from engaging in criminal acts which reflect adversely on their honesty,

trustworthiness, or fitness as a lawyer in other respects, only because such a violation was not charged.

3. Prof.Cond.R. 8.4 provides in relevant part:

It is professional misconduct for a lawyer to: ...
(b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;
(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;
(d) engage in conduct that is prejudicial to the administration of justice ...

18, 1994. On July 8, 1994, the respondent submitted a *Petition for Allowance of Fees to Attorney* requesting approval of $6,270 in attorney fees and $3,135 as his executor's fees. The Madison Superior Court approved total fees of $9,405 that same day.

On July 11, 1994, the respondent paid the estate $11,992.12 by personal check. Approximately one week later, the respondent paid the estate an additional $4,741.80 by personal check. On October 21, 1994, the respondent filed the final account for the estate which did not reflect the $16,500 in checks written to the respondent or the total repayment of $16,733.92, although it did list the difference of $233.92 as "Miscellaneous Interest" paid to the estate.

The respondent was obligated to seek the court's approval before paying himself any fees from the estate.[4] We find that the respondent violated Prof.Cond.R. 3.4(c) by knowingly disobeying that obligation by paying himself $16,500 without first obtaining court approval.[5] We find further that the respondent violated Prof.Cond.R. 8.4(b) by committing a criminal act that reflects adversely on his honesty, trustworthiness, or fitness as a lawyer in other respects in that the payment of $16,500 to himself with no legitimate basis for doing so constituted wrongful conversion of estate funds. We further find the respondent violated Prof.Cond. 8.4(c) as he engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation. Finally, we find that the respondent's actions were prejudicial to the administration of justice and, therefore, violated Prof. Cond.R. 8.4(d).

As to count III, we find that the respondent's law firm adopted a policy requiring each partner to deposit all fees generated by each partner into the firm's operating account. The respondent earned $2,600 as partial fees for legal work the respondent performed for a trust for which he served as trustee. In violation of the firm's policy, the respondent failed to deposit the $2,600 into the firm's operating account.

We find that the respondent's retention of the $2,600 constitutes a criminal act, conversion, which reflects adversely on his honesty, trustworthiness or fitness as a lawyer in other respects, in violation of Prof.Cond.R. 8.4(b). His wrongful retention of funds also involved dishonesty, fraud, deceit or misrepresentation, and thus violated Prof.Cond.R. 8.4(c). We also find that his conduct was prejudicial to the administration of justice and violated Prof. Cond.R. 8.4(d).

Having found misconduct, we must now determine an appropriate sanction. In making that assessment, we consider the nature of the misconduct, the lawyer's state of mind which underlies the misconduct, actual or potential injury flowing from the misconduct, the duty of this Court to preserve the integrity of the profession, the risk to the public in allowing the respondent to continue in practice, and any mitigating or aggravating factors. *Matter of Lehman*, 690 N.E.2d 696 (Ind. 1997). The Commission and the respondent have agreed upon a suspension from the practice of law for a period of not less than twelve months.

The respondent and the Commission offer several mitigating circumstances. They note that this is the first disciplinary

---

**4.** Ind.Code 29–1–10–13 provides, among other things, that an attorney performing services for the estate shall have such compensation as the court shall deem just and reasonable. The statute further provides that "(s)uch compensation may be allowed at the final settlement; but at any time during administration a personal representative or his attorney may apply to the court for an allowance upon the compensation of the personal representative and upon attorney's fees."

**5.** Prof.Cond.R. 3.4 provides in relevant part:

A lawyer shall not:
(c) knowingly disobey an obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists . . . .

proceeding brought against the respondent in his 40 years of legal practice. They point out that, at the time of the misconduct, the respondent was experiencing great emotional strain due to his commitments as a foster (and later adoptive) parent of three emotionally handicapped children, one of whom suffered from leukemia. Also during that time, the respondent was the primary care giver for his elderly and ill parents. We also note the respondent's refund of legal fees to the heirs to the estate under count I.

While we recognize the personal difficulties the respondent faced, as well as his refund of legal fees and funds taken without justification, those factors do not excuse the respondent's misconduct. While entrusted with the care of two estates, the respondent helped himself to significant sums of estate funds without justification for doing so. In effect, he used his position of trust to exact a personal pecuniary benefit at the expense of the rightful owners of the property. Later, he intentionally omitted salient facts from a final estate accounting to cover up his wrongful conduct. Even the respondent's own legal partners became the victims of the respondent's dishonesty when the respondent chose to retain legal fees he received rather than share those fees with his partners according to their agreement. In all, the respondent's actions reflect a disturbing pattern of deception with regard to his clients, his partners, and at least one court – actions which personal hardship cannot justify. His actions diminish the public's trust in the legal profession and the judicial system.

An attorney's misappropriation of funds while serving in a fiduciary capacity is a serious matter warranting severe sanction. *See, e.g., Matter of Hill,* 655 N.E.2d 343 (Ind.1995) (disbarment for misappropriating estate funds); *Matter of Levy,* 637 N.E.2d 795 (Ind.1994) (two-year suspension for misappropriating estate funds). We are persuaded that a suspension for a period of not less than twelve months here

adequately addresses the respondent's misconduct. This is in large part due to our policy favoring agreed resolution of disciplinary matters and the numerous mitigating factors in this case, most particularly the respondent's 40 years of otherwise unblemished legal practice. We have reached a similar conclusion in an analogous case where such mitigating factors were present. *Matter of Woolbert,* 672 N.E.2d 412 (Ind.1996) (one-year suspension where respondent withdrew $80,000 from a supervised estate without court approval where mitigating factors present).

Accordingly, the respondent, Robert W. Miller, is hereby suspended from the practice of law for a period of not less than twelve (12) months, beginning June 28, 2000, at the conclusion of which he shall be eligible to petition for reinstatement pursuant to Admis.Disc.R. 23(4).

The Clerk of this Court is directed to provide notice of this order in accordance with Admis.Disc.R. 23(3)(d) and to provide the Clerk of the United States Court of Appeals for the Seventh Circuit, the Clerk of each of the United States District Courts in this state, and the Clerk of each of the United States Bankruptcy Courts in this state with the last known address of the respondent as reflected in the records of the Clerk.

Costs of this proceeding are assessed against the respondent.

SULLIVAN, BOEHM, and RUCKER, JJ., concur.

SHEPARD, C.J., concurs only because the case is submitted as an agreement, believing that the penalty is otherwise insufficient.

DICKSON, J., dissents, believing the sanction insufficient.